**UNITED STATES of America**

v.

**Sidney ALLEN, Jr.**

**Criminal A. No. 86–AR–0270–S.**

United States District Court, N.D. Alabama, S.D.

Aug. 4, 1987.

**204**

Frank W. Donaldson, U.S. Atty., John C. Earnest, Jr., Asst. U.S. Atty., for plaintiff.

Sarah S. Hunt, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

The court is presented with a post-trial motion by defendant Sidney Allen, Jr., for a judgment of acquittal notwithstanding the jury verdict of guilty. The court denied the motion for judgment of acquittal which Allen filed after the United States rested its case. The court denied the said motion only because the court wished to give the United States an opportunity to obtain a conviction which, if obtained, would be set aside on post-verdict motion, but could be reinstated without creating a double jeopardy problem if a reviewing court should disagree with this court.

The indictment in this case charged Allen with knowingly possessing an unregistered firearm on or about October 7, 1984 in violation of 26 U.S.C. §§ 5841, 5842, 5845 and 5861. By strong circumstantial evidence which certainly met the test of proof "beyond a reasonable doubt" the United States demonstrated that on October 7, 1984 Allen knowingly had in his possession a half-filled five gallon gasoline can with a cloth wick inserted in the spout. As the United States concedes, the nefarious purpose or intended use of this "destructive device" by Allen on that occasion was not an element of the offense alleged.

Although Allen raises other questions, the court will address only those questions which have caused and which continue to cause the court serious concern. *Was Allen a "manufacturer" or a "maker", and does it make any difference?*

One section of the National Firearms Act, namely, 26 U.S.C. § 5841, requires that each "manufacturer" and each "maker" of a "firearm" register the firearm in the National Firearms Registration and Transfer Record. A "manufacturer" is required to notify the Secretary of the Treasury "of the manufacture of a firearm in such manner as may by regulations be prescribed". Such notification automatically effects the registration of such a "manufactured" firearm. On the other hand, a "maker" of a firearm is required *prior* to "making" the firearm to "obtain authoriza-

tion in such manner as required by this chapter or regulations issued thereunder." If the "maker" obtains such authorization prior to "making" the firearm, it automatically effects the registration of the firearm. Whether this automatic registration is effective when the authorization is issued or when the firearm is completed is not clear.

This court has searched the United States Code, the Code of Federal Regulations and the legislative history for the distinction which Congress must have had in mind between a "manufacturer" and a "maker." The court has been unable to find any meaningful distinction. Webster's Ninth New Collegiate Dictionary (1983) defines the word "make" as follows: "To bring into being by forming, shaping or altering material" or "to put together from components." It gives "manufacture" as a synonym for the word "make." The same dictionary defines "manufacture" as follows: "to make into a product suitable for use." It lists as a synonym for the word "manufacture" the word "make." In the brief which the United States has filed in opposition to Allen's post-trial motion, the United States says:

> Clearly demonstrated by the evidence is the fact that the defendant *acquired, manufactured* and used the explosive device that was described in the indictment within a time span of a few hours.

(emphasis supplied).

How Allen could have both "acquired" *and* "manufactured" his device the United States does not explain. The statutory and regulatory distinction between an acquisition and a creation is quite clear. The United States does not articulate any basis for its apparent belief that Allen *"manufactured"* this particular device. If he *"manufactured"* it he did not *"make"* it.

The court finds that the United States is incorrect in its description of Allen as a "manufacturer." Although the statutory distinction between "manufacturer" and "maker" is fuzzy, the court, necessarily concluding that Congress intended a distinction, decides that a "manufacturer" is someone who makes more than one of a particular item for sale, while a "maker" is someone who puts together only one of an item, or a few of it, and not for sale in the ordinary course of business. Using this deduced distinction, Allen on the undisputed facts of this case, was a "maker", and by the terms of 26 U.S.C. § 5841(c), he was required *prior* to "making" his firearm to obtain authority to do so from the Secretary of the Treasury in order to effectuate its registration.

*Was Allen's gasoline can a "firearm" requiring registration?*

Another section of the National Firearms Act, namely, 26 U.S.C. § 5845, defines a "firearm" so as to include a "destructive device." The same section defines "destructive device" to include "any explosive, incendiary or poison gas bomb" *and* "any combination of parts either designed or intended for use in converting any device into a destructive device ... and from which a destructive device may be readily assembled."

*United States v. Loud Hawk,* 628 F.2d 1139, 1146 (9th Cir.1979), *cert. denied* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980), 459 U.S. 1117, 103 S.Ct. 755, 74 L.Ed.2d 972 (1983), makes it clear that § 5845:

> does not require that the parts be put together and ready for ignition or detonation if the parts are also available from which a destructive device may be readily assembled.

Using the *Loud Hawk* analysis and the words of § 5845, a person cannot possess the *parts* from which a destructive device can be readily assembled without first obtaining authority from the Secretary to possess those parts.

Seeming to contradict its earlier definition of "destructive device," § 5845 says:

> The term "destructive device" shall not include any device which is neither designed or redesigned for use as a weapon.

This sentence arguably implies an element of "intent" in the creation of a destructive device. But "intent" is an element which the United States concedes is not an ele-

ment of the crime of which Allen is accused.

There is a half-full gasoline can, with a rag lying nearby (all of the "parts" from which a destructive device can be readily assembled), located at the present moment in the garage of the judge who is writing this opinion. These parts are not presently "intended" by their possessor to be used as a bomb. Nevertheless, the "design" is identical to the "design" of the alleged "destructive device" made and possessed by Allen. Is "design" in the mind of the "maker" or in the mind of the trier of the fact? If, despite the concession to the contrary, a destructive intent by the maker is a necessary element to prove the existence of a "destructive device," the United States presented substantial evidence tending to prove such an intent in this case.

Lastly, § 5845 provides that the term "destructive device" does *not* include "any ... device which the Secretary finds is not likely to be used as a weapon...." Perhaps it is this phrase which will keep this judge out of jail for possessing the gasoline can and rag in his garage. However, this court has been unable to find any regulation or other pronouncement by the Secretary to the effect that a half-full gasoline can into which a cloth has been inserted, or can be quickly inserted, "is not likely to be used as a weapon." Presumably, if there were such a pronouncement, Allen would not have been indicted.

Not only does 26 U.S.C. § 5841 require the registration of a "destructive device" by its "maker" *prior* to its being "made" (the "making" not being limited to the complete assembly but including possession of the necessary parts), but 26 U.S.C. § 5842(c) also provides:

Any firearm classified as a destructive device *shall be identified* in such manner as the Secretary may by regulations prescribe.

(emphasis supplied).

An examination of the pertinent regulations promulgated by the Secretary includes a perusal of 27 C.F.R. §§ 179.11, 179.101 and 179.102. These regulations are consistent with the Act but leave the method for identifying and registering a "destructive device" somewhat nebulous by providing in § 179.102:

[I]n the case of a destructive device, the Director [of the Bureau of Alcohol, Tobacco and Firearms] may authorize other means of identifying that weapon upon receipt of letter application, in duplicate, from the manufacturer, importer or maker showing that engraving, casting, or stamping (impressing) such a weapon would be dangerous or impracticable.

If this judge, who possesses a gasoline can and a rag in close proximity to each other, applied for the identification and registration of his particular "destructive device," which, in a matter of seconds, can be made into a gasoline bomb with tremendous explosive and incendiary capacity, it would be both easy and truthful for the applicant to certify to the Director that engraving, casting or stamping his destructive device would be both dangerous and impracticable. The judge cannot help but wonder what would happen if he filed a duplicate request to register his gasoline can and rag. While the same speculation could be indulged as to Allen, a jury cannot be allowed to speculate. What would have happened if prior to October 7, 1984 Allen filed a duplicate request to register his gasoline can and rag? The evidence in this case provides no answer. Of course, if no such "destructive device" can be registered under any circumstances, the United States offered no proof of it. Presumably, then, it was theoretically possible on or before October 7, 1984 for Allen to have registered his gasoline can and rag.

The question, then, becomes whether or not the Government met its burden of proving that Allen's gasoline can and rag was not actually registered to Allen on October 7, 1984.

*Was Allen's destructive device registered to him on October 7, 1984?*

■ The essential elements of the crime of which Allen is charged are contained in 26 U.S.C. § 5861(d), which makes it unlawful for a person to possess a "firearm which is not *registered* to him in the National Firearms Registration and Transfer

Record" (emphasis supplied). If the firearm is "registered" at the time of the possession, its mere possession is not unlawful, no matter what other crime may be committed by its use.

The only proof offered by the United States in support of its allegation of nonregistration to Allen on October 7, 1984 is found in Government's Exhibit 18, which is a formal BATF certificate executed on February 15, 1985. This certificate states in pertinent part:

> This is to certify that I have custody and control of the said National Firearms Registration and Transfer Record pursuant to a delegation of authority by the Secretary of the Treasury.

> I further certify that, after diligent search of the said Record, I found no evidence that the firearm or firearms described below *are* registered to, or have been acquired by lawful manufacture, importation, or making by, or transfer to Sidney Allen a/k/a Sidney Allen, Jr.

(emphasis supplied).

The firearm is "described below" in the certificate as "[d]estructive device consisting of five gallon can, yellow in color, with plastic pour spout on top and a red cloth wick, containing about four gallons of gasoline." Allen's can was yellow and his wick was red. There was no evidence that his can ever contained "about four gallons of gasoline," but the difference between the two-and-one-half gallons proven and the approximately four gallons described in the certificate is, in the court's opinion, not significant enough to be fatal.

The fatal flaw in the Government's case is its use of the present tense in its BATF certificate. The dictates of English grammar compel the conclusion that this certificate does not purport to speak to the question of whether or not this particular firearm was registered to Allen on October 7, 1984. It only speaks of nonregistration on February 15, 1985, over four months after the events described in the indictment. In short, Exhibit 18 only certifies that the firearm described was not registered to Allen *as of February 15, 1985.* The United States argues in its brief:

> Under the facts of this case, it would have been highly unlikely, if not impossible, for anyone else to have registered the device from the time it was used on October 7, 1984, until the time of the records search on February 15, 1985. Therefore, assuming *arguendo*, that the defendant *had* registered the device as prescribed by statute, his name would have been the *only* one listed on the registration form regardless of the date shown on the document. And, since the certificate indicates, in no uncertain terms, that the device is not registered to the defendant, the Government maintains that the evidence on this point is sufficient to sustain the conviction.

This argument concedes what the court has already pointed out, namely, that there was no proof here of the theoretical impossibility of anyone's ever registering a gasoline can and rag as a "destructive device." Therefore, for the sake of this case, the court must indulge the assumption that Allen could have registered his "destructive device" on or prior to October 7, 1984. If he *could* have done so, inasmuch as he is presumed innocent and has no burden of proof whatsoever, the court must assume that he did so unless the United States offered some evidence to the contrary. The United States offered no such evidence. The United States contends that if the device had been registered on October 7, 1984, "his [Allen's] name would have been the *only* one listed on the registration form." If this is true (despite the absence of any evidence of the procedures actually employed by BATF), the language of the certificate only conveys the information that the device was not registered to Allen as of February 15, 1985. As this court now holds, the English language must be given its ordinary meaning unless there is some reason for giving it an arcane or different meaning. If BATF intended, as the Government now argues, for the word "are" to mean "are and never have been," BATF or the Secretary could and should have promulgated its new definition of the word "are". Only such a redefinition of

words would authorize the court and jury to recognize that the present tense embraces the past tense. Logically, if the "destructive device" *could* have been registered in Allen's name on October 7, 1984, it could have been registered in somebody else's name on February 15, 1985, even if "highly unlikely" as the United States argues. And does "highly unlikely" meet the burden of proving a fact beyond a reasonable doubt?

An evidence technician maintained custody of this gasoline can and rag between October 7, 1984 and the date of trial. If the evidence technician had been as worried about possessing an unregistered firearm as this judge is now worried, he might have registered the device in his own name after October 7, 1984, so that on February 15, 1985, it would *not* have been registered to Allen. While the United States suggests that this analysis is hyper-technical, this court believes that criminal statutes must be strictly construed in favor of the accused and that the prosecution is required to dot its "I's" and to cross its "T's" and to use its tenses correctly.

The United States urges upon this court *United States v. Mayo,* 705 F.2d 62, 76 n. 10 (2d Cir.1983), for the proposition that the present tense includes the past tense. In *Mayo,* the Second Circuit said:

Mayo also contends that the government's proof was insufficient to support his conviction on count 12 which charged him with unlawful possession of the British Sten machine gun in violation of 26 U.S.C. § 5861(d) (1976). Section 5861(d) makes it unlawful for a person to possess a firearm that is not registered to him in the National Firearms Registration and Transfer Record. The government entered into evidence a certificate from a BATF examiner certifying that, "after deligent [sic] search of said record, I found no record that the firearms described below [British Sten machinegun] are registered to, or have been acquired by lawful making, transfer or importation by HAROLD F. MAYO, JR....." J.App. at 103. Because the certificate was dated October 7, 1980, Mayo argues that it does not prove non-

registration as of the date of the indictment, August 21, 1980. This deficiency was compounded, in Mayo's view, by the district court's instruction to the jury that the certificate established registration on August 21, 1980. We reject Mayo's argument for several reasons. Considering the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the jury could have reasonably inferred that the BATF examiner did not limit her examination of the record to those weapons registered only on October 7, 1980. Moreover, the jury was presented with evidence showing that Mayo, as a convicted felon, could not lawfully have firearms registered to him.

In the first place, this court quickly notes that Mayo was a convicted felon and therefore *could not have registered* the Sten machine gun in his possession. On October 7, 1985, Allen was not a convicted felon. The certificate offered into evidence against Mayo was a redundancy and the finding by the Second Circuit was unnecessary to its decision, therefore *dictum.* In the second place, this court cannot follow the Second Circuit's reasoning. This court may agree that a jury could have reasonably inferred that the BATF examiner did not limit her examination of the record to those weapons registered only on February 15, 1985, but the examiner never mentioned any date except February 15, 1985 and certainly did not even purport to certify that this particular "destructive device" was not registered to Allen on October 7, 1984, the only date mentioned in this indictment.

If the Eleventh Circuit or the Supreme Court decides to take the English language into the dimension suggested by the Second Circuit in *Mayo* and here suggested by the United States, this court will not shed tears for Allen, but will feel a certain anguish over having learned hard lessons in English grammar and logic.

### Conclusion

The National Firearms Act and its accompanying regulations leave much to be

desired as far as clarity is concerned, but they are well crafted when compared to the printed BATF form of certificate introduced by the Government in this case as its Exhibit 18. The draftsman, instead of the words he wrote, could easily have written:

I hereby certify that the below described firearm was never registered to [*Sidney Allen, Jr.*] between the dates of [*October 6, 1984*] and [*February 15, 1985*].

The United States is, in effect, asking this court to overlook or forgive very poor forensic draftsmanship which the United States incorrectly describes as innocuous. Under the limitations and admonitions of the Constitution of the United States and the requirement that the United States prove *beyond a reasonable doubt* that this gasoline can was not registered to Allen on October 7, 1984, the court cannot ignore such a serious semantic error.

The mere fact that counsel for Allen was unsuccessful in her efforts to teach the jury a lesson in English grammar does not relieve this court from its responsibility as a grammarian. Not because five out of ten homeowners in the United States probably possess gasoline cans and rags in their homes or basements (the same "destructive device" which Allen possessed), and not because the court can speculate that all such "destructive devices" are probably unregistered, but because the United States failed to meet its burden of proving an essential element of the indictment, namely, that Allen's "destructive device" was unregistered to him on October 7, 1984, Allen's post-judgment motion for acquittal will be granted.